G. LOEWUS & CO., INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT, v. ALBERT VISCHIA, INDI-VIDUALLY AND TRADING AS SONOMA VINEYARDS WINERY AND AS REINCO, DEFENDANT-RESPONDENT.

Argued March 7, 1949—Decided April 18, 1949.

*Mr. David Stoffer* (*Messrs. Stoffer & Jacobs,* attorneys; *Mr. Joseph M. Jacobs,* on the brief) argued the cause for the appellant.

*Mr. Edward R. McGlynn* (*Messrs. McGlynn, Weintraub & Stein,* attorneys) argued the cause for the respondent.

The opinion of the court was delivered by

OLIPHANT, J. Plaintiff-appellant appeals from a judgment of nonsuit entered against it in the former Supreme Court, Essex County Circuit.

Plaintiff was a wholesale liquor distributor owning and operating a wine bottling plant in the City of Newark. Defendant owned and operated a winery in the City of Paterson. On March 31, 1942, the parties entered into two contracts. One provided for the sale of plaintiff's wine bottling equipment to defendant, the other, upon which this cause is predicated, was a "requirements" contract which by its terms was to continue in force for sixteen months and to be renewed automatically unless terminated under its provisions.

The complaint was in four counts. By stipulation the causes of action set forth in the third and fourth counts were settled and judgment entered in favor of the plaintiff thereon. This appeal is from a judgment entered for the defendant on the first and second counts, which claimed damages for failure of the defendant to fill orders given him by plaintiff pursuant to the contract sued on. The first count was for damages for loss of profits on orders given between May 14, 1942, and May 14, 1943, and not filled, the second count was to recover anticipated profits on orders plaintiff claims to have given defendant between July 30, 1943, and July 31, 1944. The cause was tried by the court, sitting without a jury.

The pertinent portions of the contract are as follows:

"1. Vischia agrees to sell to Loewus all types of domestic wines; said wines shall be bottled by Vischia under labels designated by Loewus; said wines shall be bottled and furnished to Loewus pursuant to such orders therefor as are received from time to time by Vischia from Loewus. Loewus agrees to place orders with Vischia from time to time for such wine as it may require under labels bearing brand or trade names which are its exclusive property.

"3. It is agreed that the provisions of the preceding paragraphs shall apply to the brand names 'Sunlight' and 'Ramona' now being used by Loewus and to such other brand names as are used on individual orders of 500 cases or more received by Vischia from Loewus. It is further agreed that in so far as other brand names applied to wine which is not ordered in such quantities are concerned, and in so

far as wine bearing the private label of any particular retailer is concerned, Vischia shall bottle and furnish the same to Loewus pursuant to this agreement, provided that in such event Vischia may impose the following additional charge above the cost fixed in paragraph 2, etc.

"5. Vischia agrees to maintain at all times adequate equipment, staff and force of employees to meet the requirements of Loewus and guarantees (except for matters beyond his control) that he will fill in proper and sufficient manner all orders received from Loewus within one week after the receipt of the order.

"7. Nothing hereinbefore or hereafter contained shall in any wise restrict the freedom of Loewus to purchase all imported wines, or domestic wines bottled by others under labels which are not the exclusive property of Loewus by ownership or lease.

"8. It is agreed that in the event Vischia fails for any reason whatever to fill an order submitted by Loewus within seven days after the receipt thereof, Loewus may proceed without restriction to place such order and obtain the ordered product elsewhere."

Judge William A. Smith, in finding for the defendant, held the contract did not require or bind plaintiff to purchase from defendant any more wine than it wanted or desired, but even if it did the amount which defendant might be required to furnish was too uncertain to render the contract definite enough to be enforceable and that it was not enforceable as to the orders given but not filled.

The court below found as a fact that defendant was unable to reasonably estimate what supply plaintiff would require of him and that if plaintiff was obligated to give defendant all his orders the contemplated business was of such a character that, under the contract for the requirements of the business, neither party was in a position to make a reasonable estimate of what those orders might be.

The basic question before us is whether the contract is mutual and enforceable or whether it is unilateral, lacks mutuality and hence is unenforceable.

While under the contract plaintiff was assured of an ample supply of wine, it was, nevertheless, only required to purchase such wines from defendant as it might "require under labels bearing its brand or trade names which are its exclusive property."

By the terms of paragraph 7 it is apparent, however, there was nothing in the contract to prevent plaintiff from purchasing all the necessary wine to meet the requirements from others than defendant so long as it did not use labels bearing brand or trade names which were its exclusive property. As a matter of fact it appears no orders were placed with defendant under this contract for wines under brands which were the exclusive property of plaintiff. On the contrary a brand belonging to defendant was used.

Before the contract in suit was entered into the business of plaintiff was the buying and selling at wholesale bottled wines and in part the bottling of wines under its own brands and selling these at wholesale. When the contract was entered into plaintiff changed its business to that of buying bottled goods solely and re-selling them at wholesale. A new business was created the requirements of which were unknown.

██ Both parties in this cause rely largely on *Ferenczi v. The National Sulphur Co.,* 11 *N. J. Misc.* 262 (*Cir. Ct.* 1933), an opinion by Judge, now Justice Ackerson, sitting at the Hudson Circuit. As there said "In passing upon the validity of contracts of this character the general rule is that it will be presumed that the parties thereto intended to make a binding and enforceable obligation. *Baker v. Murray,* 137 *Okl.* 288, 74 *A. L. R.* (*Anno.*) 477. As between two equally reasonable constructions, we should adopt the one which makes the contract valid, as against that reaching a contrary result. *Pittsburgh Plate Glass Co. v. V. H. Neuer Glass Co.,* 253 *Fed. Rep.* 161. See also *Bullowa v. Thermoid Co.,* 114 *N. J. L.* 205, 210 (*E. & A.* 1935).

██ With regard to "requirement" contracts providing for the furnishing of such material as one may need or require they are, by the weight of authority, held mutual and binding on the parties where, from the nature of the purchaser's business the quantity of the goods needed is subject to a reasonably accurate estimate. The basis of the rule is that the purchaser's obligation to buy to the extent of his requirements or needs supplies mutuality. *Ferenczi v. The National Sulphur Co., supra,* and the cases therein cited.

In considering the validity of purely executory contracts the rule is that "where the promise has for its subject matter something, which by the terms of the contract is left to depend for its very existence upon the future election of the promisor, it will not form a valid consideration for an executory contract, but where such subject matter, in the normal and *bona fide* course of events as contemplated by both parties, is not thus left dependent, it will form such valid consideration, although there may be elements of quantity, requirement, selection, etc., agreed to be left to the future discretion of the promisor," *Atlantic Pebble Co. v. Lehigh Valley R. R. Co.*, 89 *N. J. L.* 336, 341 (*E. & A.* 1916); *Ferenczi v. The National Sulphur Co., supra.*

In *Williston on Sales*, § 464a (*Rev. Ed.*), it is stated:

"It is true, as a general rule, that if it is wholly optional with one party to a bilateral agreement whether he shall perform or not, there is no legal contract. The promise of that party in such a bargain is illusory; that is, though in form a promise, it is so qualified that the promisor really engages himself for nothing and his illusory promise is insufficient consideration to support a counterpromise. A promise to buy such a quantity of goods as the buyer may thereafter order or to take goods in such quantities 'as may be desired' or as the buyer 'may want' is not sufficient consideration since the buyer may refrain from buying at his option and without incurring legal detriment himself or benefiting the other party."

In the case *sub judice* the undertaking of the plaintiff is left to depend for its very existence upon its future election as to whether it will purchase from defendant any bottled wine under its own exclusive brands, or whether it will purchase all or a considerable part thereof from others under other brands.

The contract is unilateral, lacks mutuality and hence is unenforceable.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, WACHENFELD and ACKERSON—5.

*For reversal*—Justices HEHER and BURLING—2.