22 A.3d 60 (2011)
420 N.J. Super. 495
CALCO HOTEL MANAGEMENT GROUP, INC. d/b/a Days Inn at Freehold and Andrew C. Befumo, Inc., Plaintiffs-Respondents,
v.
Patricia GIKE, Defendant/Third-Party Plaintiff-Appellant,
v.
Joseph Michael Wood, Third-Party Defendant.
No. A-2308-10T4.
Superior Court of New Jersey, Appellate Division.
Telephonically Argued May 23, 2011.
Decided June 28, 2011.
*61 Bruce E. Helies, Manasquan, argued the cause for appellant (Wolff, Helies, Duggan, Spaeth & Lucas, P.A., attorneys; Gary Steen, on the briefs).
Allan Maitlin argued the cause for respondents (Sachs, Maitlin, Fleming & Greene, attorneys; Mr. Maitlin, of counsel and on the brief; Christopher Klabonski, West Orange, on the brief).
Before Judges AXELRAD, R.B. COLEMAN, and J.N. HARRIS.
The opinion of the court was delivered by
AXELRAD, P.J.A.D.
Defendant, Patricia Gike, the renter of a hotel room, appeals from summary *62 judgment holding her vicariously liable under the Hotel and Multiple Dwelling Law, N.J.S.A. 55:13A-1 to -28, and its regulations promulgated by the Commissioner of the Department of Community Affairs (DCA), N.J.A.C. 5:10-1.1 to -28.1, for property damage caused by her guest, even though she never entered the room and was not present when the incident causing the damage occurred. We affirm in part and remand in part.
Plaintiffs Calco Hotel Management Group, Inc. and Andrew C. Befumo, Inc. filed a two-count complaint against Gike, asserting a claim based on ordinary negligence principles (count one) and on administrative regulations relating to the maintenance of hotels (count two). Gike filed an answer and third-party complaint against her guest, Joseph Michael Wood.[1] Plaintiffs thereafter filed a motion for summary judgment and Gike filed a cross-motion. Following oral argument on January 22, 2010, the trial court granted plaintiffs' motion for summary judgment on the second count of their complaint and denied Gike's cross-motion, articulated in a statement of reasons and memorializing orders dated March 2, 2010.[2] Following oral argument on July 9, 2010, the court denied Gike's motion for reconsideration, articulated in a statement of reasons and memorializing order dated July 14, 2010. On December 8, 2010, final judgment in the amount of $675,000 was entered against Gike, based on a stipulation not contained in the appellate record. This appeal ensued.

I.
Viewed most favorably for Gike, Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995), the motion record reveals the following. Gike, an elderly woman, knew Wood for about twelve years when the events giving rise to this appeal took place. She encountered Wood sporadically throughout this time and occasionally hired him as a handyman to perform work at her house in Freehold. On Friday, May 11, 2007, while Wood was performing yard work for Gike, he began having a seizure. Gike transported Wood to a nearby hospital and returned home. The following morning Wood telephoned and asked Gike to pick him up from the hospital. He told her he had no place to go but needed to remain in the area for a follow-up medical appointment on Monday, May 14, 2007. Gike agreed to rent him a room at the Days Inn in Freehold for a two-night stay.
Gike and Wood arrived at the hotel around 9:30 a.m., she paid for the room with her credit card, and she left Wood there. Gike signed a reservation form that listed one room, one adult, for two nights, in which she agreed "personally to pay all charges incurred during [her] stay" and "abide by . . . house rules." The form further stated, in pertinent part, that the hotel "is not responsible for property damage or loss. Your party assumes all risks of personal injury unless caused by hotel's sole negligence."
According to Wood's deposition testimony, the room was not ready when he was dropped off so he walked to a nearby liquor store, purchased beer and began drinking. He then encountered a friend and the two of them took a bus to Lakewood. *63 After a short visit with his uncle, Wood purchased a gas can from Auto Zone, filled it with some gasoline, and caught a bus back to the Days Inn. Already intoxicated, Wood bought more beer before returning with his friend to the hotel. The record indicates Gike was unaware of Wood's conduct after she left him at the hotel.
Wood retrieved the room key from the front desk and, once inside the room, he lit a cigarette and prepared to huff the gasoline.[3] Prior to doing so, he accidentally kicked the gas can over and some gasoline spilled onto the floor. The tip of the cigarette ignited the gasoline and, as described by Wood, "the place just went up." The fire caused significant damage to the hotel, stipulated at $675,000.
Plaintiffs argued on summary judgment that Gike, as the renter of the room, was an "occupant" under N.J.A.C. 5:10-2.2, which defines "occupant" as follows:
[A]ny person or persons, including guests, in actual physical possession or occupancy of a unit of dwelling space on a regular basis. For purposes of assigning specific duties or responsibilities, the term "occupant," unless the text indicates otherwise, shall mean the tenant, lessee, head of the family or household, or other adult person or emancipated minor assuming basic responsibility for the continued renting or occupancy of the dwelling space.
According to plaintiffs, the "actual physical possession" component of the regulation was satisfied, as the use of the room was exclusively within the control of Gike or her guest, and upon her payment of the two-day rental, the designated room was denied to the whole world, with the exception of her and her guest.
Plaintiffs further argued that, as an occupant, Gike was responsible for the activities of her guest in the hotel room pursuant to N.J.A.C. 5:10-5.1, entitled "Responsibility of occupants." N.J.A.C. 5:10-5.1(a) holds an occupant "responsible for violations of [the] chapter" to the extent she "has the power to prevent the occurrence of a violation or assist in abating the violation." An occupant has the power to prevent the occurrence of a violation if:
1. It is caused by his own willful act or the willful act of a member of his family or household, or of his guest; or
2. It is the result of his gross negligence, neglect or abuse, or the gross negligence, neglect or abuse of a member of his family or household, or his guest.

[N.J.A.C. 5:10-5.1(a)(1) and (2) (emphasis added).]
According to plaintiffs, the regulation places "absolute responsibility" on the person who signs for the room. Plaintiffs cited as examples the following expenses arising from the use of the room for which the signer would be responsibleroom service, paid movies, mini bar, or telephone chargesas well as damages to the room itself. Plaintiffs further urged the intent of these sections was to make the *64 renter of a hotel room responsible for these expenses or damages caused by his or her guest notwithstanding the renter was not present at the time or was unaware of who incurred or caused them.
Gike's argument was that the plain meaning of the term "occupant" as defined in the regulation mandates the person have "actual physical possession" of the hotel room. According to Gike, the second sentence of N.J.A.C. 5:10-2.2 expands upon and qualifies the first sentence, explaining that all persons in "actual physical possession" of a hotel room are not necessarily subject to the "specific duties or responsibilities" assigned to an "occupant." Rather, only the named "tenant, lessee, head of the family or household, or other adult person or emancipated minor" assuming basic responsibility for the continued renting or occupancy of the hotel room would have duties and responsibilities while in actual physical possession of the room. Ibid. Gike reasoned that because she could not be considered an "occupant" within the meaning of the regulations as she never set foot in the room, never obtained a key to the room, and never took any other actions consistent with establishing occupancy of the room, she could not be subject to the duties imposed by N.J.A.C. 5:10-5.1. Accordingly, Gike argued that summary judgment should be entered in her favor dismissing the second count of plaintiffs' complaint.
The court rejected Gike's argument and found persuasive plaintiffs' argument that the purpose of the regulation was to prevent renters of hotel rooms from escaping liability for damages to the room caused by their guests simply by stating they did not cause the damage or did not know who caused the damage, or claiming they were not present when the damage was done, and thus they were not in "actual" physical possession of the room. The court reasoned that since Gike paid for the room, she was the one "assuming basic responsibility" for its continued renting under N.J.A.C. 5:10-2.2.
The court concluded, based upon "the relevant language of the regulation," that Gike clearly was the "occupant" of the subject room within the intendment of N.J.A.C. 5:10-5.1. It also found not debatable that Wood was Gike's guest because she procured the room that he occupied at the time of the fire, and Wood's conduct in huffing gasoline while smoking was, at a minimum, negligent. Accordingly, the court found Gike "`responsible' as a matter of law" under N.J.A.C. 5:10-5.1(a)(2) and granted plaintiffs' motion for summary judgment on the second count of its complaint.
On reconsideration, Gike argued for the first time that because N.J.A.C. 5:10-5.1 does not expressly set forth a civil remedy, any alleged violation by her only should be something the court could charge the jury as evidence of negligence in a common law action for property damage, and was not negligence per se.[4] Declining to address this issue on the merits, the court held Gike had not demonstrated the necessary factors for reconsideration under D'Atria v. D'Atria, 242 N.J.Super. 392, 576 A.2d 957 (Ch.Div.1990).
On appeal, Gike renews the arguments she made in connection with the summary judgment motion and motion for reconsideration. Specifically, Gike asserts error by the trial court in interpreting N.J.A.C. 5:10-2.2 to include her within the definition of "occupant" and in denying her motion for reconsideration.[5]
*65 When reviewing a grant of summary judgment, we employ the same standards used by the motion judge under Rule 4:46. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998). First, we determine whether the moving party has demonstrated there were no genuine disputes as to material facts, and then we decide whether the motion judge's application of the law was correct. Atl. Mut. Ins. Co. v. Hillside Bottling Co., 387 N.J.Super. 224, 230-31, 903 A.2d 513 (App.Div.), certif. denied, 189 N.J. 104, 912 A.2d 1264 (2006). In so doing, we view the evidence in the light most favorable to the non-moving party. Brill, supra, 142 N.J. at 523, 666 A.2d 146. We accord no deference to the motion judge's conclusions on issues of law, Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 382-83, 997 A.2d 954 (2010); Manalapan Realty, L.P., v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995), which we review de novo. Dep't of Envtl. Prot. v. Kafil, 395 N.J.Super. 597, 601, 930 A.2d 457 (App.Div.2007). The facts pertaining to the second count of plaintiffs' complaint are not in dispute, thus we independently analyze the law to determine whether summary judgment was properly entered in favor of plaintiffs on the second count of their complaint.
Based on our analysis of the facts of the case and the regulations, we are satisfied the trial court properly concluded Gike was an "occupant" within the meaning of N.J.A.C. 5:10-2.2 and -5.1. Administrative regulations are subject to the same rules of construction as a statute and should be construed according to the plain meaning of the language. Czar, Inc. v. Heath, 398 N.J.Super. 133, 138, 939 A.2d 837 (App.Div.2008), aff'd as modified, 198 N.J. 195, 966 A.2d 1008 (2009); see also 1A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 31:6 (7th ed. 2009).
"If the plain language leads to a clear and unambiguous result, then [the] interpretive process is over." TAC Assocs. v. N.J. Dept. of Envtl. Prot., 202 N.J. 533, 541, 998 A.2d 450 (2010) (quoting Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195, 927 A.2d 543 (2007)). Further, "courts should avoid a construction that would render `any word in the statute to be inoperative, superfluous or meaningless, or to mean something other than its ordinary meaning.'" Bergen Commer. Bank v. Sisler, 157 N.J. 188, 204, 723 A.2d 944 (1999) (quoting In re Estate of Post, 282 N.J.Super. 59, 72, 659 A.2d 500 (App.Div.1995)).
Had the agency intended the word "occupant" to be confined to a person physically occupying the space, there would have been no reason to have included the second sentence in the definition of "occupant." N.J.A.C. 5:10-2.2. The second sentence expanded the definition beyond physical possession to "assign[] specific duties or responsibilities" to, among others, an "adult person . . . assuming basic responsibility for the continued renting or occupancy of the dwelling space," ibid., whether or not in actual possession. Such person would have "responsib[ility] for violations of this chapter" to the extent the violations were caused by the willful act, or the gross negligence, neglect or abuse of her guest. N.J.A.C. 5:10-5.2(a)(l) and (2).
This interpretation is consistent with the intent and purpose of the statute and regulations. *66 As stated by the Legislature, the Hotel and Multiple Dwelling Law was enacted "for the protection of the health and welfare of the residents of this State" to assure "decent, standard and safe units of dwelling space." N.J.S.A. 55:13A-2. The Legislature directed the DCA to enact regulations it deemed necessary "to assure that any hotel or multiple dwelling will be maintained in such manner as is consistent with, and will protect, the health, safety and welfare of the occupants or intended occupants thereof, or of the public generally." N.J.S.A. 55:13A-7. This policy is echoed in N.J.A.C. 5:10-1.2, which states the "purpose" of the regulations is to "provide reasonable minimum requirements and standards . . . for the regulation of the maintenance of hotels and multiple dwellings in the State of New Jersey in the interest of public safety, health and welfare, as well as to provide effective administrative structures for enforcement."
Thus, the regulations are designed to impose duties and responsibilities on owners and occupants to ensure particularized building and fire safety codes relating to multiple dwellings and hotels are followed. See, e.g., N.J.A.C. 5:10-4.1 (requiring concurrent responsibilities for owners and occupants for maintenance of the premises); N.J.A.C. 5:10-5.3 (prohibiting an occupant or other person from creating or maintaining any condition constituting a violation of the Uniform Fire Code, N.J.A.C. 5:70).[6] The DCA arguably decided to make everyone with a reasonable connection to the apartment unit or hotel room "responsible" for ensuring compliance with the building and fire safety codes. Because Gike participated, in some fashion, in facilitating a fire code violation by putting Wood into the hotel room, though for altruistic reasons, after which he huffed the gasoline while smoking, it is logical for the regulations to render her responsible as an occupant for such violation.
The inquiry, however, does not stop there. The determination that Gike is an "occupant" under N.J.A.C. 5:10-2.2 and -5.1, does not automatically impose civil liability on her as a matter of law for damages sustained to the hotel room as a result of Wood's willful act, gross negligence, neglect, or abuse. N.J.A.C. 5:10-5.1, entitled "Responsibility of occupants," renders an occupant "responsible for violations of this chapter" in an instance such as occurred here, and presumably subject to the "violation penalties" enumerated in N.J.A.C. 5:10-1.17. The regulation does not necessarily render Gike liable for civil damages. In contrast, N.J.A.C. 5:10-5.5, entitled "Willful damage," provides that
[e]very occupant shall be liable for willfully or maliciously causing damage to any part of the premises which results in a violation of this chapter. Any adult occupants shall be responsible and liable for any violation of this section caused by minors under their care or custody occupying the same unit of dwelling space if the violations were created or permitted to continue with the knowledge or acquiescence or consent of said adult member.
[Emphasis added.]
*67 We raised our concern at oral argument whether summary judgment was appropriate. In other words, whether the regulations render Gike strictly liable for compensatory damages as a matter of law. Plaintiffs' counsel understandably referenced the procedural posture of the case. He emphasized that, as articulated in the trial court's statement of reasons appended to the March 2, 2010 summary judgment order, plaintiffs' basis for summary judgment on the second count of their complaint was that Gike was responsible for Wood's actions under the regulatory provisions and, accordingly, was liable for the damages sustained by plaintiffs as a matter of law. In her cross-motion for summary judgment, Gike only argued the regulatory language requires an "occupant" to have physical possession of the room, which she did not, consequently no duties arose. Accordingly, the trial court solely addressed that issue and found in plaintiffs' favor as a matter of law.
Gike first raised in her motion for reconsideration the private cause of action issue. We cannot fault the trial judge in declining to address the newly raised issue as not implicating Rule 4:49-2 and the Cummings v. Bahr[7] standard.
Moreover, on appeal, Gike did not brief the merits of this argument. Accordingly, plaintiffs' counsel respectfully but vociferously references the oft-cited case of Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973), holding that issues not raised before the trial court will ordinarily not be considered on appeal unless they are jurisdictional in nature or substantially implicate public interest. He further urges us not to decide this issue, arguing Gike abandoned the issue when she chose not to address the merits in her appellate brief, and thus plaintiffs were denied the opportunity to present opposing legal arguments. See Ramapo Brae Condo. Ass'n v. Bergen Cnty. Hous. Auth., 328 N.J.Super. 561, 582, 746 A.2d 519 (App. Div.2000) (refusing to consider any of the plaintiffs' claims against a particular party where the sole reference to that party was "contained in one conclusory sentence" in the brief alleging "the trial court ignored the facts and misapplied the law").
We understand the frustration of plaintiffs' counsel in this matter. It clearly would have been preferable for Gike to have raised the potential dichotomy of the regulatory penalty and private cause of action for compensatory damages at the initial summary judgment stage, not upon reconsideration. This is not a situation, however, where this issue was never brought up in the trial court or on appeal. It was raised, though late, in the trial court, and Gike appealed both the March 2, 2010 order granting plaintiff summary judgment and the July 14, 2010 order denying reconsideration. Our duty upon review of a summary judgment motion is to independently canvass the record and determine whether the trial court's grant of summary judgment is correct as a matter of law. In this case, based on the framing of the issue and relief sought, the court's grant of summary judgment in favor of plaintiffs renders Gike liable as a matter of law for compensatory damages for Wood's actions at the hotel. We are not convinced the finding that Gike is an "occupant" under the regulatory scheme in itself mandates this result. Accordingly, we affirm the grant of summary judgment to plaintiffs solely as to this finding. We conclude, however, at this juncture the principles enunciated in Brill require denial of plaintiffs' motion for summary judgment regarding Gike's liability for compensatory damages.
*68 We agree with plaintiffs that it would be fundamentally unfair for us to decide this issue on appeal without affording counsel the opportunity to brief and argue the issue on the merits. Accordingly, to prevent an unjust result, R. 2:10-2, and in the interests of judicial economy, we remand this issue to the trial court for briefing and consideration. If the court deems it appropriate, it may also proceed on the first count of plaintiffs' complaint.
Affirmed in part; remanded in part. We do not retain jurisdiction.
NOTES
[1] Although Wood survived the fire giving rise to this appeal, the parties represent he is now deceased.
[2] The court denied plaintiffs' motion as to the first count, alleging ordinary negligence. Noting conflicting evidence regarding Gike's knowledge of Wood's alcoholism and other dangerous habits, the court found genuine issues of material fact existed as to Gike's knowledge and the foreseeability of Wood's actions.
[3] The National Drug Intelligence Center defines "huffing" as "the purposeful inhalation of chemical vapors to achieve an altered mental or physical state, which for most abusers is a euphoric effect." See U.S. Dep't of Justice, National Drug Intelligence Center, Huffing: The Abuse of Inhalants (Nov. 2001), available at http://www.justice.gov/ndic/pubs07/708/index.htm. See also Newman v. State, 353 Ark, 258, 106 S.W.3d 438, 443 n. 1 (2003) ("By `huffing,' it was understood that they were inhaling an intoxicant such as glue, turpentine, paint, or gasoline."); E.P. v. Alaska Psychiatric Inst., 205 P.3d 1101 (Alaska 2009). (Describing the practice of "huffing" as "inhaling gasoline fumes and other substances to get high").
[4] We glean this from the transcript of oral argument.
[5] Gike merely states reconsideration was erroneously denied. She does not brief the substantive issue that the regulations do not confer a private cause of action on a hotel owner for damages presumably contained in her brief in support of her reconsideration motion.
[6] It is undisputed Wood's conduct violated at least two provisions of the 2006 International Fire Code, adopted into the Uniform Fire Code pursuant to N.J.A.C. 5:70-3.1(a): (1) "It shall be unlawful to deliberately or through negligence set fire to or cause the burning of combustible material in such a manner as to endanger the safety of persons or property." § 305.4, Deliberate or negligent burning; (2) "No person shall throw or place, or cause to be thrown or placed, a lighted match, cigar, cigarette, matches, or other flaming or glowing substance or object on any surface or article where it can cause an unwanted fire." § 308.2.1 Throwing or placing sources of ignition.
[7] Cummings v. Bahr, 295 N.J.Super. 374, 384-85, 685 A.2d 60 (App.Div. 1996).